STATE OF IOWA, Appellee, v. I. LAZARUS, Appellant.

PERJURY: Evidence—Willfulness and Corruptness—Belief—Understanding—Knowledge, Etc.  Howsoever false a statement under oath may be, it will not constitute perjury unless it is made *corruptly* and *willfully.*  It follows of necessity that the defendant's *belief, knowledge* and *understanding,* and freedom from any tempting circumstances, may be quite material on the issue of guilt or innocence.

PRINCIPLE APPLIED: Defendant, without receiving any consideration therefor, took oath on a $300 bond that he was the absolute owner of a lot. This was false. Long prior to taking said oath, a decree, to which he was a party, had been entered, quieting the title to one half of the lot in defendant's wife, and the other half in a person other than defendant. On the east side of this lot stood two houses. Defendant lived in one; the other was rented.

*Held*, defendant was entitled to testify:

1. That he did not *understand* that a decree had been entered excluding him from all title to said lot.

2. That it was his *understanding* that the rented portion of the lot was no part of his homestead.

3. That the value of the lot was far in excess of the bond.

4. That he received nothing whatever for signing the bond.

*Appeal from Polk District Court.*—HUBERT UTTERBACK, Judge.

FRIDAY, NOVEMBER 16, 1917.

DEFENDANT was indicted for perjury and convicted, and appeals. Opinion states the facts.—*Reversed and remanded.*

*Parsons & Mills,* for appellant.

*H. M. Havner,* Attorney General, and *Ward C. Henry,* for appellee.

PERJURY: evidence: wilfulness and corruptness: belief: understanding: knowledge, etc.

GAYNOR, C. J.—The defendant was indicted by the grand jury of Polk County on the charge of perjury. The indictment rests upon the following facts set out therein:

One Scott McClure was regularly cited by the judge of the district court to appear and show cause why he should not be punished for contempt of court in the violation of a liquor injunction. The citation was regularly

filed in said court on the 14th day of August, 1916. Upon the appearance of said Scott McClure in response to said citation, the court ordered that he be admitted to bail in the sum of $300. In order to secure the release of the said Scott McClure, it became necessary in said proceedings that he file a bond, with proper securities, with the clerk of the court in which the suit was pending. The said Scott McClure appeared with defendant for the purpose of furnishing said bond, and securing the release of the said McClure. An appearance bond was thereupon prepared by the clerk in the usual form, conditioned that the said Scott McClure appear and submit to the judgment of the court in said proceedings. The bond was in the sum of $300. The defendant herein signed the same as surety, and, to make said bond effectual and secure the release of the said Scott McClure, the defendant made the following affidavit, subscribed and swore to the same before the clerk of the district court:

"The undersigned, whose name is signed to the foregoing bond as bail for said defendant, being duly sworn, depose and say: I, I. Lazarus, as a resident of the state of Iowa, and a freeholder therein; that I own absolutely in my own name and right the following described real estate in Polk County, Iowa, not claimed or occupied by me as a homestead, to wit: Lot 5, Block 4, E. Ft. Des Moines, Iowa, which is reasonably worth $3,000, encumbered $400, and that I am worth in real estate the sum of $600 exclusive of property exempt from execution.

"(Signed) I. Lazarus.

"Subscribed and sworn to by said I. Lazarus before me this 14th day of August, A. D. 1916."

The contention of the State is that the defendant was not, at the time, the owner of the property described in said affidavit; that he well knew that he was not; that he wilfully, falsely and corruptly swore that he was the owner

of said property, for the purpose of having the clerk believe that he was a resident and freeholder in said county, and owned said property as therein stated, and that said bond was good for the amount therein sought to be secured. The defendant pleaded not guilty, was tried to a jury, convicted, and appeals.

The undisputed evidence shows that, prior to the making of said bond and the taking of said oath, and on May 20, 1915, the defendant conveyed to one Goldberg the property described in his affidavit; that said deed contained the following provision: "This conveyance is made subject to a mortgage to the Capital City State Bank for $1,300 and interest," and subject to this defendant's homestead right in and to the same. It appears that the defendant had a homestead right in the east half of this lot conveyed to Goldberg. It fairly appears from the record that, as between Goldberg and this defendant, it was understood that the deed conveyed only the west half of Lot 5, and that the east half, the homestead part, was reserved to defendant therein; at least they seem to have acted upon this supposition. We may assume, for the purposes of this case, that this deed to Goldberg reserved the east half of the lot; that the east half of the lot was not conveyed to Goldberg in this deed. But it appears without dispute that subsequently a suit was commenced by one Palumsky against one Tobis, to which this defendant and his wife and Goldberg were made parties; that this defendant was duly served with notice of the pendency of said suit; that, on the 21st day of March, 1916, about five months before this bond was signed, the court, having jurisdiction of the subject matter of the parties, entered a decree in which the court found that Goldberg was the owner of an undivided one-half interest in the property described in the affidavit. and that Mrs. Clara Lazarus, wife of defendant, was the owner of the other undivided half of said property, free

and clear of the mortgage debt of the Capital City State Bank; and the title was accordingly quieted in Goldberg and in the defendant's wife, and title in said land quieted against the plaintiff in said suit, and against this defendant, Isaac Lazarus, and all persons claiming by, through or under them.

So it appears from the undisputed evidence that, at the time this affidavit was made, the defendant had no title to the property described in his affidavit; that all the right he had in said property was a right of homestead. There is no evidence that he was the owner of any other property at the time he made the affidavit. It is apparent that the defendant swore falsely when he said in his affidavit:

"I own absolutely and in my own name and right Lot 5, Block 4, E. Fort Des Moines, Iowa, not claimed or occupied by me as a homestead."

Upon the trial of the cause, the defendant, recognizing this fact, sought to show that he did not know of the existence of this decree, and he was permitted to say, in substance, that he did not know there was a decree entered on the 21st day of March, 1915, in the district court of Polk County, by the terms of which his wife was declared to be the owner of an undivided one-half interest in Lot 5, Block 4, E. Fort Des Moines, and that Goldberg was declared to be the owner of the other undivided one half. He testified:

"I knew there was something filed, but I didn't know just how it was, and I never read it, and I never looked at it."

The statute (Section 4872, Code of 1897) provides:

"If any person, on oath * * * lawfully administered, wilfully and corruptly swear * * * falsely * * *, he is guilty of perjury."

This evidence was admitted rightly, as tending to

negative the thought that he wilfully and corruptly swore that he was, at the time of the making of the affidavit, the owner of the property described in his affidavit, and as tending to show that he in good faith believed that he was the owner of the east half of this lot at that time.

It appears that on this lot there were four houses, two on the east half and two on the west half. There is a driveway between the two on the east and the two on the west, a brick driveway, supposed to divide the lots into two equal parts, facing 60 feet on Des Moines Street. This driveway, of course, makes it 30 feet on each side. One of the houses on the east side was occupied by the defendant as a homestead. The other was rented and occupied. These houses were on opposite ends of this east half. After the defendant had testified that he did not know of this decree, he testified that only one of the two houses on the east side was occupied as a home, and that he understood the homestead to cover the ground only on which the house actually stood. He testified:

"I know what a homestead is. It is what a person lives in. I occupied one house, but did not live in both of them; I rented one, and do yet."

He was then asked this question:

"Now I will ask you to state what your understanding was as to whether or not that property (meaning the property on the east half occupied by a tenant) was a part of the homestead?"

Objection to this was sustained on the ground that it was immaterial as to what his understanding was. The purpose of this was to show that the defendant in good faith believed that the portion of the east half of the lot occupied by the tenant was not a homestead, and was, therefore, not exempt. Thereupon the defendant sought to show, by competent evidence, what property in that vicinity was worth. Objection was interposed in the following language:

"We do not count on any allegation in regard to the value. The only question is whether the defendant was in truth and in fact the owner of Lot 5," etc.

Thereupon the court refused to hear any evidence as to the value of the land, on the ground that such proof was immaterial, saying:

"The question is not as to the value of the property, but as to the ownership of it according to the indictment."

The materiality of this question appears when we consider that the defendant was charged not only with misstating the facts under oath, but with misstating them wilfully and corruptly. To find the defendant guilty, it was necessary that the jury should be able to say from the record not only that the statements as to ownership were untrue, but that such statements were made wilfully and corruptly.

The defendant said in the affidavit that he owned the entire lot. There is no question in this record that, as to the west half, the statement was not true. In the light of the decree, we are justified in saying that the statement was not true as to the east half, but does this meet the whole situation? The fact that he stated what was not true does not necessarily involve him in criminality. It must appear further that he wilfully and corruptly stated what was not true. He sought to avoid the effect of the misstatement, and to meet the charge that he misstated wilfully and corruptly, by showing—and this he was permitted to do—that he didn't know that the decree relied upon divested him of his former interest in the east half; that he still believed he was the owner of the east half. He was then met by the proposition that, even if he did not know that the decree had divested him of his rights in this east half, yet he did know that the east half was occupied as a homestead, and therefore exempt. To meet this, he under-

took to show that, at the time he made the affidavit, he believed that at least one half of this east half, or one fourth of the whole, was not a part of the homestead. This was denied him. He then sought to show that this half of the east half, which he thought was not a part of the homestead, was worth a sum far in excess of the obligation that he assumed in the bond. This was denied him. There is no claim that this east half was encumbered. It is apparent then, that, if the jury could find from a record made, that the defendant honestly believed that he had an interest in Lot 5—though his interest was confined to the east half—and could further find that he honestly believed that the homestead character that attached to this east half covered only a small portion of the east half, and that the portion not affected by the homestead right was, in value, far in excess of the obligation which he assumed in making the bond, the jury would be justified in saying that he was not actuated by a wilful and corrupt motive in making the affidavit in question. It would at least have some probative force upon that issue, and the defendant was entitled to have it go to the jury for what it was worth. Suppose the defendant had been able to make it appear that the interest that he honestly believed he had in that property, at the time he made the oath in question, several times exceeded the obligation which he assumed, could it be said that he wilfully and corruptly made the statement complained of?

In *State v. McKinney*, 42 Iowa 205, the defendant was charged with perjury, in that he falsely swore that, in 1872, he had no partner in the business of farming and tilling certain land. It appeared that this was not true; that he had in fact a partner. For the purpose of showing that he made the statement in good faith, believing it to be true, although it was false, he called a certain attorney to the stand for the purpose of showing, through this at-

torney, that he was advised by him that no partnership existed. The court said:

"The matter inquired about, the existence of a partnership, is a mixed question of law and fact. If it could be shown that defendant was advised by his counsel that the relation existing between him and Lineback [the alleged partner] was not a partnership, such testimony would be entitled to consideration, in determining whether or not the defendant made oath to what he knew or believed to be untrue."

A man cannot be said to have falsely and corruptly sworn to a fact, if he in good faith believed the fact stated by him to be true. Knowledge and belief are material in a prosecution for perjury, and the party charged is entitled to state in his defense what his belief in respect to the matter was, and it is for the jury to say whether or not he did honestly believe, at the time he made the oath, the fact to be other than it was shown to be. The court erred, therefore, in not allowing defendant to say that he did not understand that the house occupied by the tenant, situated on the east half, was a part of the homestead, and erred in not allowing defendant to show the actual value of the property which he claims he believed he owned, unaffected by the homestead.

If a man is honestly mistaken as to the existence of a fact which he affirms under oath to exist, he cannot be convicted of perjury upon a mere showing that the fact was other than was stated by him under oath. It must affirmatively appear that the statement was made wilfully and corruptly; for this is an essential element of the crime of perjury. Though the court denied the plaintiff a right to show his belief touching the ownership of this property, it defined the meaning of these words in its instructions to the jury, and told them that the word "wilfully" meant "intentionally, unlawfully, without legal right or lawful

authority, corruptly, with fraudulent intent, designedly, and with improper motives." So it follows that, if the jury were permitted to take this testimony which the court denied them, it could and should be considered by them in determining whether the defendant made the affidavit with fraudulent intent, designedly, and with improper motives. The court denied defendant the right to make proof which would negative, if believed by the jury, that he made the affidavit with fraudulent intent, designedly and with improper motives. This was clearly error.

The defendant offered to show that he received no consideration for signing this bond, as tending to negative the idea that he wilfully and corruptly signed it. We think this evidence should have gone to the jury as bearing upon the question considered above.

The attorneys who appeared in this court did not appear in the trial below. The record was not preserved as it should be under the rules, but we are satisfied that the defendant was denied a substantial right in the trial, and this justifies a reversal.—*Reversed and remanded.*

WEAVER, PRESTON and STEVENS, JJ., concur.